## Lawless-Mawhinney Motors, Inc. *vs.* Evelyn G. Mawhinney, individually and as trustee.

Middlesex.   December 11, 1985. — March 27, 1986.

Present: Dreben, Kaplan, & Kass, JJ.

*Injunction. Declaratory Relief. Motor Vehicle,* Dealer. *Landlord and Tenant,* Summary process, Injunctive relief. *Practice, Civil,* Judicial discretion.

On appeal pursuant to G. L. c. 231, § 118, second par., from an interlocutory order restraining a landlord from evicting her lessee, an automobile dealership, it was held that the lessee was entitled to bring an action for declaratory and injunctive relief with respect to the lease in question without waiting for the landlord to commence eviction proceedings through a summary process action pursuant to G. L. c. 239. [740-743]

In an action by a tenant, an automobile dealership, seeking declaratory and injunctive relief to prevent its landlord from evicting it as a result of a dispute over the terms of the lease in question, it was well within the judge's discretion to grant the tenant's request for a temporary injunction, based on the conclusion that the threat of dislocation to the tenant from its traditional place of business exceeded the harm which would befall the landlord from any delay caused by requiring her to answer in the Superior Court rather than permitting her to bring a summary process proceeding in the first instance, especially in view of the fact that the injunction was conditioned on the tenant's filing of a surety bond in the amount of $50,000. [743-744]

Civil action commenced in the Superior Court Department on May 9, 1985.

A motion for a preliminary injunction was heard by *Charles R. Alberti,* J.

*Roderick MacLeish, Jr.* (*James L. Bryant* with him) for the defendant.

*J. Owen Todd* for the plaintiff.

Kass, J. In anticipation of eviction proceedings from commercial space it occupied in Lexington, Lawless-Mawhinney Motors, Inc. (tenant), launched a preemptive action which

sought declaratory and temporary injunctive relief, as well as damages under G. L. c. 93A, § 11. A judge of the Superior Court enjoined the defendant Evelyn Mawhinney (landlord) "from interfering with the [tenant's] use and occupation of the premises at 577-581 Marrett Road, . . . or from attempting to evict the [tenant] . . . ."[1] The landlord has appealed from that interlocutory order pursuant to G. L. c. 231, § 118, second par.

Richard J. Lawless worked for Robert Mawhinney's Chrysler automobile dealership for some fifteen years, and, through a newly organized corporation, bought the assets of the business from Mawhinney's estate. The good will associated with the business location was among those assets and from 1965 to 1970 the tenant occupied without a lease. In 1981, the tenant pressed for a written lease to assure occupancy over a measurable term. Counsel for landlord proffered a draft of a five-year lease. Negotiations ensued and culminated on June 4, 1982, in the submission of a revised lease document for the signature of the tenant. The earlier draft lease had provided for a five-year term with a starting rent of $3,000 per month and increments of $500 per month in each successive year, so that the monthly rent in the fifth year period was $5,000; the latter version contained a one-year term and accorded to the tenant four successive one-year extension options, each extension year at a rent that was $500 higher per month than the previous year, consequently, the monthly rent during the fourth extension term, i.e., the fifth year of occupancy would likewise be $5,000. Basic rent in each year was, thus, the same under either draft. The second version, however, called for a payment of $9,000 as "an inducement for the Lessor to enter into" the lease. In other respects the two versions were substantially alike.

Lawless signed counterpart originals on behalf of the tenant and mailed them, together with the $9,000, to the landlord's

[1]The judge conditioned issuance of the preliminary injunction on the filing by the tenant of a surety bond in the amount of $50,000 to secure any damages suffered by the landlord should she ultimately be found to have been unlawfully restrained. Mass.R.Civ.P. 65(c), 365 Mass. 833 (1974).

lawyer for execution by the landlord. No completely executed counterpart was ever returned to the tenant.

Exercise of the extension option required written notice to the landlord not more than ninety nor less than sixty days before the expiration of the then term of the lease. The lease terms expired May 31 and, therefore, the deadline for exercising the option each year was April 1. The tenant did not in any year comply with the notice procedure. Instead it merely paid the stepped up rent for the first and second extension terms without comment.

The tenant explains it had sent to the landlord all the counterparts which it had received of the final version, anticipating one fully executed counterpart back, and had retained only a copy of the initial draft (which described a five-year term) for reference purposes. Consequently, the tenant claims to have labored under the misapprehension that it occupied under a five-year lease. During the first and second extension terms, the landlord accepted the increased rent and did not mention the tenant's failure to comply with the procedure for exercise of the extension options.

On April 2, 1985, a day after the deadline for exercise of the third extension option, counsel for the landlord sprung the trap: it sent a notice to the tenant declaring the lease at an end as of May 31, 1985, and called upon the tenant to quit the premises by that date.

Implicit in the tenant's complaint are several theories which could support a claim for injunctive relief: estoppel, mutual mistake, amendment through conduct, reformation, and deceptive conduct within the meaning of G. L. c. 93A. See the second paragraph of G. L. c. 93A, § 11.

1. *Availability of equitable remedy.* The landlord's first line of attack is that injunctive relief was improvidently granted because the tenant had adequate remedies at law: there was no need to anticipate; should the landlord bring eviction proceedings through summary process action (G. L. c. 239), there would be time enough to determine what landlord and tenant agreements flowed from the documents and the parties' conduct. See G. L. c. 231, § 31, c. 239, § 8A. Irreparable harm,

the landlord calls to attention, is absent if trial on the merits can be conducted before the injury occurs. See *Packaging Indus. Group, Inc.* v. *Cheney,* 380 Mass. 609, 617 n.11 (1980).

There exists, however, a line of cases which say that a lessee need not await a first strike by a landlord, but may, at the lessee's option, seek declaratory and injunctive relief. *Bancroft Trust Co.* v. *Canane,* 271 Mass. 191, 199 (1930). *Elm Farm Foods Co.* v. *Cifrino,* 328 Mass. 549, 553 (1952). *DeVincent Ford Sales, Inc.* v. *First Mass. Corp.,* 336 Mass. 448, 453 (1957). *Ace Trophy Co.* v. *Gordon,* 354 Mass. 767 (1968).

Those cases rest largely on the rationale that the defenses which a tenant may set up in a summary process proceeding, although they could include equitable defenses (see G. L. c. 231, § 31, and Uniform Summary Process Rule 9 [1980]), would not admit to all forms of equitable relief and, thus, the tenant would be without a remedy which is plain, adequate, and complete. It taxes the imagination as to just what remedies were beyond avail to a tenant-defendant even in the pre-1974[2] era in which those cases were decided. None seem to be beyond reach now that the procedural distinctions between actions at law and suits in equity have been abolished. See Mass.R.Civ.P. 2, 365 Mass. 733 (1974). Cf. *Atkinson's, Inc.* v. *Alcoholic Beverages Control Commn.,* 15 Mass. App. Ct. 325, 329 (1983).

A sufficient explanation of the common principle which runs through the cases adverted to, namely the allowance of declaratory and injunctive relief in advance of eviction proceedings, is that there is no reason for a tenant who has a bona fide dispute about possession under a lease to lie supine until the landlord strikes. Cf. *Lynch* v. *Union Inst. for Sav.,* 158 Mass. 394, 395 (1893). It may be important for a tenant to know as early as possible if, when, and how he may occupy the premises in which he is situated. The instant case is illustrative. An automobile dealership is often confined to a circumscribed geographic area. See, e.g., G. L. c. 93B; *Ricky Smith Pontiac, Inc.* v. *Subaru of New England, Inc.,* 14 Mass. App. Ct. 396,

---

[2] The year in which the Massachusetts Rules of Civil Procedure became effective. See 365 Mass. 730.

400 (1982). Finding an alternative location is much complicated by the requirement of staying out of the territory of a dealer selling the same brand. Indeed, in the instant case Chrysler Motors had evinced concern about the duration of the tenant's lease term. Moreover, if the tenant were simply to abide events, it ran the risk of a lockout or other taking of possession by the landlord under § 18 of the purported lease to which the parties had subscribed. Cf. *Gidwani* v. *Wasserman,* 373 Mass. 162, 166 (1977). Even transient interference with the operation of the tenant's retail business could inflict grave damage. Customers might be reluctant to do business at a car agency with "For Rent" signs plastered on the picture windows.

We are of opinion that it is open to the tenant to maintain its anticipatory action. That action ought to be comprehensive and any jury issues necessarily raised by the dispute should be tried to a jury (both parties have filed claims for a jury) as part of the proceedings. See art. 12 of the Massachusetts Declaration of Rights; Uniform Summary Process Rule 8 (1980). Cf. *Nei* v. *Burley,* 388 Mass. 307, 314 (1983). Nor should the anticipatory action by the tenant be permitted to derail the cause from the express track which summary process is supposed to afford. See Uniform Summary Process Rule 1, which provides that the Uniform Summary Process Rules and the Mass.R.Civ.P. "shall be construed and applied to secure the just, speedy, and inexpensive determination of every summary process action." The Commentary to Uniform Summary Process Rule 1 acknowledges the legislative intent that eviction cases proceed with dispatch. "This is based," the Commentary says "on the notion that real estate constitutes unique property and that because it generates income, time lost in regaining it from a party in illegal possession can represent an irreplaceable loss to the owner." Mass. Ann. Laws, Uniform Summary Process Rules, at 236 (1982).

The right of the tenant, here acknowledged, to launch an anticipatory action does not require interdiction of a backfire summary process action by the landlord. We do not think that the injunction in this case does, or should, go that far. It enjoins the landlord from "interfering with the [tenant's] use and occu-

pation of the [leased] premises . . . or from attempting to evict the [tenant] from [the] premises." We take the verb "evict" in that context to mean steps which alter the physical status quo rather than legal steps to adjudicate the rights of the parties. Had the landlord filed a summary process action, it could have been consolidated for trial with the anterior action initiated by the tenant. Most of the issues would be the same but an overlay of a summary process action might serve to direct the consolidated cause onto the fast track contemplated by the Legislature. Speedy completion of pleadings, expedited and limited discovery, an early litigation control conference, and assignment of an early trial date are among the devices which lessors and the courts may employ to avoid frustration of the legislative design of enabling real estate owners to oust an illegal possession with a modicum of speed.

Thanks in fair measure to the procedural detour brought about by the interlocutory appeal before us, the instant case is a study in that kind of frustration. It is now foreseeable that, by the time the case is over, the parties will be well on their way to May 31, 1987, the termination date of the lease, interpreted most favorably to the tenant.

2. *The preliminary injunction.* As to the lawfulness of the interlocutory injunctive relief granted, the landlord, as appellant, faces a formidable task. An appellate court tests only whether the trial judge has abused his discretion. *Packaging Indus. Group, Inc.* v. *Cheney,* 380 Mass. at 615-616. We "will not reverse if there is a supportable basis for the [trial] court's action even if, on final analysis, it may prove to be mistaken." *New England Patriots Football Club, Inc.* v. *University of Colo.,* 592 F.2d 1196, 1200 (1st Cir. 1979). *Westinghouse Bdcst. Co.* v. *New England Patriots Football Club, Inc.,* 10 Mass. App. Ct. 70, 75 (1980).

So far as the merits are concerned, we do not think that at this stage of the record the chances of making out a case of estoppel (see e.g., *Cellucci* v. *Sun Oil Co.,* 2 Mass. App. Ct. 722, 728 [1974]) leading to a reformation of the lease or a case of deceptive conduct under G. L. c. 93A, § 11, are so improbable as to move us to conclude that the judge abused

his discretion. Touching on the balance of harm, it was well within the judge's discretion to conclude that the threat of dislocation to the tenant from its traditional place of business exceeded the harm which would befall the landlord from such delay as might result in requiring her to answer in the Superior Court rather than permitting her, in the first instance, to be the plaintiff in a summary process proceeding.[3]

> *Order allowing preliminary*
> *injunction affirmed.*

---

[3] Were the landlord ultimately to prevail, she had the relative security of access to the bond referred to in note 1, *supra*.