DIPLOMAT PROPERTY MANAGER, LLC vs. LOZANO, 102 Mass. App. Ct. 57

 
 DIPLOMAT PROPERTY MANAGER, LLC vs. JAMES A. LOZANO & another. [Note 1]

102 Mass. App. Ct. 57
 September 6, 2022 - December 30, 2022

Court Below: Housing Court, Central Division
Present: Sullivan, Blake, & Grant, JJ.

 

No. 21-P-690.

Summary Process. Mortgage, Foreclosure. Real Property, Mortgage. Practice, Civil, Summary judgment, Summary process, Standing, Pendency of prior action. Housing Court, Jurisdiction.

In a summary process action arising from a mortgage foreclosure, the Housing Court judge properly allowed a motion for summary judgment granting possession of a condominium unit to the plaintiff, where the plaintiff had standing to bring the action as a so-called "remote" purchaser, in that the Legislature intended to eliminate unnecessary delay and inefficiency since the merger of law and equity in 1974, and courts hearing summary process actions, including the Housing Court, had jurisdiction to hear numerous challenges to foreclosure, including cases involving foreclosures initiated by remote purchasers [59-63]; and where, even accepting that the entity that conducted the foreclosure sale (prior to the conveyance of the property to the plaintiff) was a division of another company, that did not mean that the foreclosing entity was not also doing business on behalf of the other company, and its title to the unit and its subsequent foreclosure process were valid [63-65].

In a summary process action arising from a mortgage foreclosure, the defendants failed to demonstrate that the Housing Court judge abused his discretion in denying their motion to dismiss on the basis of a pending Superior Court action in a different county and proceeding with the summary process action. [65-66]

Summary Process. Complaint filed in the Central Division of the Housing Court Department on May 15, 2019.

 The case was heard by Jeffrey M. Winik, J., on a motion for summary judgment, and a motion for reconsideration was considered by him. 

 Brian J. Wasser for the defendants.

 Christine Kingston for the plaintiff.

 SULLIVAN, J. In this summary process action, the defendants, James A. Lozano and Crystal A. Himes, appeal from a judgment 

 Page 58 

entered after a judge of the Housing Court allowed a motion for summary judgment granting possession of a condominium unit in Upton (unit) [Note 2] to the plaintiff, Diplomat Property Manager, LLC (Diplomat). [Note 3] On appeal, the defendants challenge Diplomat's standing to bring a summary process action, the authority of the foreclosing entity to foreclose on the unit, and the denial of their motion to dismiss due to a prior pending action. [Note 4] For the reasons that follow, we affirm.

 Background. We summarize the facts from the summary judgment record in the light most favorable to the defendants, reserving certain facts for later discussion. See Williams v. Board of Appeals of Norwell, 490 Mass. 684, 685 (2022). We do so aware that "[a]ny doubts as to the existence of a genuine issue of material fact are to be resolved against the party moving for summary judgment." Lev v. Beverly Enters.-Mass., Inc., 457 Mass. 234, 237 (2010).

 The defendants purchased the unit and obtained a mortgage loan of $280,000 on September 1, 2005, from Mortgage Master, Inc., secured by a first mortgage on the unit granted to Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for Mortgage Master, Inc. On the same day, the defendants also obtained a second loan from Mortgage Master, Inc. in the amount of $50,500, secured by a second mortgage on the property, also granted to MERS. The judge noted that the defendants stopped making payment on their loan obligations in March 2011, and have not made any payments since then. On appeal, the defendants do not contend otherwise.

 On January 6, 2012, MERS assigned the defendants' first mortgage to CitiMortgage, Inc. CitiMortgage, Inc.'s loan servicer sent a written notice of default on the defendants' first mortgage loan on February 2, 2012, and on March 29, 2012, sent another notice of default and notice of the defendants' right to cure 

 Page 59 

pursuant to G. L. c. 244, § 35A. CitiMortgage, Inc. thereafter assigned the defendants' first mortgage to Citibank, N.A., as trustee for the benefit of SWDNSI Trust Series 20010-2 on September 26, 2013, and on January 14, 2016, Citibank, N.A. assigned it to "Christiana Trust, a division of Wilmington Savings Fund Society, FSB, not in its individual capacity, but solely as separate trustee for PennyMac Loan Trust 2012-NPL1" (Christiana Trust). The defendants do not dispute that Christiana Trust also held the defendants' note. Between September 5, 2014, and April 22, 2016, Christiana Trust's servicer sent at least eight letters to the defendants noting their default and informing them of mortgage assistance programs. So far as the record reflects, the defendants did not respond.

 On November 30, 2016, Christiana Trust conducted a duly noticed foreclosure sale at which Christiana Trust was the high bidder with a bid of $301,000. [Note 5] After acquiring title at the foreclosure sale, Christiana Trust transferred the unit by quitclaim deed to PNMAC Mortgage Co., LLC (PNMAC), and on March 1, 2018, PNMAC transferred the unit by quitclaim deed to Diplomat.

 On November 14, 2018, Diplomat served on the defendants a notice to vacate the unit, and on May 13, 2019, Diplomat served the defendants with a summary process summons and complaint seeking possession and use and occupancy charges. The defendants filed an answer that included defenses claiming, among other things, superior title to Diplomat and that Diplomat lacked standing.

 Ultimately, on Diplomat's motion for summary judgment, the judge concluded that Christiana Trust (i) was a trade name of Wilmington Savings Fund Society, FSB, (ii) had authority to exercise the statutory power of sale, and (iii) conducted a proper foreclosure sale and passed valid title to PNMAC, which then passed valid title to Diplomat. The judge concluded that Diplomat was entitled to possession and use and occupancy payments of $67,200, and awarded Diplomat a total of $79,009.11.

 Discussion. "Summary judgment is appropriate where there is no material issue of fact in dispute and the moving party is entitled to judgment as a matter of law." HSBC Bank USA, N.A. v. Morris, 490 Mass. 322, 326 (2022) (Morris). The burden is on 

 Page 60 

the moving party to affirmatively demonstrate "the absence of a genuine issue of material fact on every relevant issue, regardless of who would have the burden on that issue at trial." Khalsa v. Sovereign Bank, N.A., 88 Mass. App. Ct. 824, 829 (2016), quoting Arcidi v. National Ass'n of Gov't Employees, Inc., 447 Mass. 616, 619 (2006). We review the judge's decision on summary judgment de novo, and we may affirm on any grounds supported by the record. Roman v. Trustees of Tufts College, 461 Mass. 707, 710-711 (2012).

 1. Standing. The defendants contend that Diplomat lacks standing to bring a summary process action because it is a "remote purchaser," that is, a purchaser that did not purchase the unit at the foreclosure sale. They rely on a series of cases first generated in the Nineteenth Century for the proposition that "if facts do not fall within the narrow classes of cases for which summary process may be used, there must be resort to the writ of entry. Summary process cannot be extended to try title in cases outside its terms." Sheehan Constr. Co. v. Dudley, 299 Mass. 51, 53 (1937), and cases cited. See Warren v. James, 130 Mass. 540, 542-543 (1880). [Note 6]

 However, this narrow construction of the summary process statute has been largely negated since the merger of law and equity in 1974. See G. L. c. 231, § 31, as appearing in St. 1973, c. 1114, § 164; Mass. R. Civ. P. 2, 365 Mass. 733 (1974). This merger culminated in a series of cases from the Supreme Judicial Court (and this court) recognizing the broad authority of the Housing Court (among others) to hear not just challenges to the validity of the foreclosure, but to challenges to title, and other claims, defenses, and counterclaims in summary process matters. See Morris, 490 Mass. at 326 (counterclaims under G. L. c. 183C, § 15 [b] [2]); Federal Nat'l Mtge. Ass'n v. Rego, 474 Mass. 329, 330 (2016) (Rego) (defenses and counterclaims pursuant to G. L. c. 93A); Bank of Am., N.A. v. Rosa, 466 Mass. 613, 615-616 (2013) (Rosa) (Housing Court's authority to hear and decide myriad defenses and counterclaims); Bank of N.Y. v. Bailey, 460 Mass. 327, 328 (2011) (Bailey) ("Housing Court has jurisdiction to consider the validity of the plaintiff's title as a defense to a summary process action"); Deutsche Bank Nat'l Trust Co. v. Gabriel, 81 Mass. App. Ct. 564, 568-570 (2012) (Gabriel) 

 Page 61 

(considering adequacy of affidavit of sale). [Note 7] As a result, the narrow application of the summary process statute urged on us by the defendants no longer applies. We explain.

 Early Nineteenth Century iterations of the summary process statute limited summary process to parties in a landlord-tenant relationship. See Warren, 130 Mass. at 541 (summary process limited to whether relation of landlord and tenant existed and was terminated; no question of title could be raised). However, in 1879, the statute underwent an expansion to permit the use of summary process by those with title after a foreclosure sale. See St. 1879, c. 237 (now embodied in G. L. c. 239, § 1). [Note 8] See also Bailey, 460 Mass. at 332 ("The summary remedy statute was in force when the General Statutes were revised in 1835 and was retained through later revisions, to provide a cause of action to those not in a traditional landlord-tenant relationship"). Nonetheless, 

 Page 62 

the Supreme Judicial Court interpreted the words "person having valid title after a foreclosure sale" to apply only to the immediate purchaser at foreclosure, even though the statute -- by its broad terms -- appeared to allow "the person entitled to the land or tenements" to recover possession after a mortgage had been foreclosed by a sale, and did not expressly restrict the term "person" to the purchaser at foreclosure. St. 1879, c. 237. See, e.g., Swain v. Sogliero, 267 Mass. 236, 237 (1929) (summary process not available to grantee of purchaser at foreclosure, citing Warren); Covell v. Matthews, 245 Mass. 135, 136-137 (1923) (same, citing Warren); Warren, supra at 542-543.

 The rationale of these cases was that the summary process statute limited legal challenges to foreclosure to the exercise of the power of sale, and that other challenges, including challenges to title, should be sought in equity. [Note 9] The necessity of this bifurcated approach was eliminated with the merger of law and equity in 1974. As the Supreme Judicial Court observed in Rosa, 466 Mass. at 615, the Housing Court "has jurisdiction to hear defenses and counterclaims that challenge the title of a plaintiff in a postforeclosure summary process action, which previously only could have been the subject of an independent equity action in the Superior Court."

 Our current case law not only reflects historical change, but a modern legislative scheme that "promotes the legislative goal of just, speedy, and inexpensive resolution of summary process cases. The pursuit of speedy and inexpensive summary process actions is compromised if the Housing Court must stay summary process proceedings while litigation on the validity of the foreclosure proceedings continues in another court. This creates precisely the type of unnecessary delay and inefficiency that the Legislature intended to eliminate when it reorganized the trial courts in the Commonwealth." (Quotations and citation omitted.) 

 Page 63 

Bailey, 460 Mass. at 334. [Note 10] For this reason, courts hearing summary process actions, including the Housing Court, have jurisdiction to hear numerous challenges to foreclosure, including cases involving foreclosures initiated by so-called "remote" purchasers. [Note 11] See generally, Rego, 474 Mass. at 338-339; Rosa, 466 Mass. at 615; Bailey, 460 Mass. at 334. Accordingly, Diplomat had standing to bring this action.

 2. Christiana Trust. The defendants maintain that Christiana Trust is not a legal entity authorized to foreclose on property or to sue and be sued in courts of the Commonwealth, and therefore, the foreclosure sale was invalid. They rely on Federal cases that they contend stand for the proposition that divisions of companies have no standing to sue or be sued in their own name. See, e.g., Griffith v. Keystone Steel & Wire, Div. of Keystone Consol. Indus., Inc., 887 F. Supp. 1133, 1138 (C.D. Ill. 1995).

 "Massachusetts is a nonjudicial foreclosure State . . . and thus 'does not require a mortgage holder to obtain judicial authorization to foreclose on a mortgaged property.'" Morris, 490 Mass. at 336, quoting U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637, 645-646 (2011). Where it was never necessary to sue the defendants in order to foreclose on their mortgage, we need not determine whether Christiana Trust could sue or be sued.

 We consider nonetheless whether Christiana Trust could take title to the mortgage and note and authorize its servicer to foreclose on the unit. The judge determined that Christiana Trust was a trade name of Wilmington Savings Fund Society, FSB (WSF), and the record reflects that a vice-president of WSF averred that Christiana Trust was both a division of WSF and a trade name for WSF and that registration filings for Christiana Trust were made in the State of Delaware. The defendants 

 Page 64 

countered with documents they contended were compiled by their attorney that, they purport, demonstrated that no entity in Delaware was registered as Christiana Trust. To the extent the documents were even properly part of the summary judgment record, attached as they were to counsel's affidavit with little explanation, we conclude that the debate as to whether Christiana Trust was registered in Delaware is immaterial to the issues before us.

 In Massachusetts, "[t]here is no statutory prohibition whereunder a corporation may not use a name other than its own apart from the matter of infringing upon another's right to use a name." Women's Mut. Benefit Soc'y, St. Mary of Carmen v. Catholic Soc'y Feminine of Maria S.S. of Monte Carmelo, 304 Mass. 349, 351-352 (1939). Indeed, "[i]t is well settled that a person or corporation may assume or be known by different names, and contract accordingly, and that contracts so entered into will be valid and binding if unaffected by fraud." William Gilligan Co. v. Casey, 205 Mass. 26, 31 (1910). See General Motors Acceptance Corp. v. Haley, 329 Mass. 559, 565-566 (1952). Here, viewing the evidence in the light most favorable to the defendants, there was no evidence of intent to defraud; at all relevant times, documents explicitly identified Christiana Trust as "a division of Wilmington Savings Fund Society, FSB, not in its individual capacity, but solely as separate trustee for PennyMac Loan Trust 2012-NPL1." There was no evidence of an attempt to hide that Christiana Trust was a division of WSF. See Sales Fin. Corp. v. McDermott Appliance Co., 340 Mass. 493, 494 (1960) (no reasonable possibility that anyone would be misled where fact that trustee was corporation was expressed in name). While G. L. c. 110, § 5, requires persons conducting business in the Commonwealth under any title other than the real name of the person conducting business to "file in the office of the clerk of every city or town where an office of any such person or partnership may be situated a certificate" identifying the name and residence of each person conducting such business, it has not been shown that WSF had an office in the Commonwealth.

 Moreover, the penalty for violating the registration requirement is a fine; a violation does not affect contractual rights. "[F]ailure to comply with G. L. . . . c. 110, § 5, does not render a contract void." Farnum v. Bankers' & Shippers' Ins. Co. of N.Y., 281 Mass. 364, 369 (1933). Thus, even accepting that Christiana Trust was a division of WSF, that does not mean that it was not also doing business on behalf of WSF as Christiana Trust, and its title 

 Page 65 

to the unit and its subsequent foreclosure process were valid.

 3. Prior pending action. The defendants contend that their motion to dismiss this action should have been allowed because a pending action in Superior Court in Barnstable County constituted a prior pending action under Mass. R. Civ. P. 12 (b) (9), as amended, 450 Mass. 1403 (2008). The parties have engaged in litigation in multiple courts regarding the unit. [Note 12] Pertinently here, on May 8, 2019, the defendants commenced an action in the Superior Court in Barnstable County against mortgage insurer United Guaranty Residential Insurance Co. (UGRIC), Christiana Trust, Harmon Law Offices, P.C., and Diplomat that, with regard to Diplomat, challenged the foreclosure, sought to quiet title, and sought a declaratory judgment that the assignments of title leading to Diplomat's title were void (Barnstable action). [Note 13] The docket shows that the defendants, however, did not serve the complaint in the Barnstable action on Diplomat until at least July 3, 2019, by certified mail. Diplomat commenced this summary process action on May 15, 2019, weeks before it was served with the Barnstable action complaint. Thus, the defendants' insinuations of nefarious conduct by Diplomat in bringing the summary process action are unfounded.

 Moreover, the claim splitting that Mass. R. Civ. P. 12 (b) (9) seeks to prevent, see Lyons v. Duncan, 81 Mass. App. Ct. 766, 771 (2012), is not at issue here. First, it does not appear to us that the Superior Court in Barnstable County has venue over the possession of real property located in Worcester County. See G. L. c. 239, § 2. Second, one party cannot by anticipatory action prevent the other from benefiting from the attributes of summary process -- which includes "[s]peedy completion of pleadings, 

 Page 66 

expedited and limited discovery, an early litigation control conference, and assignment of an early trial date, " devices the Legislature has allowed to enable "real estate owners to oust an illegal possession with a modicum of speed." Lawless-Mawhinney Motors, Inc. v. Mawhinney, 21 Mass. App. Ct. 738, 743 (1986). Thus, the defendants have not demonstrated that the Housing Court judge abused his discretion in proceeding with the summary process action. See Gold Star Homes, LLC v. Darbouze, 89 Mass. App. Ct. 374, 378-379 (2016) (no error, abuse of discretion, or prejudice to mortgagors in Housing Court judge's denial of motion to dismiss under Mass. R. Civ. P. 12 [b] [9] where no unfairness claimed).

 We affirm the judgment and the order denying the motion for reconsideration. As noted above, see note 4, supra, we address additional arguments in our decision issued this day pursuant to our rule 23.0.

 So ordered.

FOOTNOTES
[Note 1] Crystal A. Himes. 

[Note 2] The unit is located at 39 Knowlton Circle, building six, unit C in the Samreen Villa I Condominium. 

[Note 3] The defendants' notice of appeal reflects that they also appeal from the denial of their motion for reconsideration. While the defendants point to evidence they brought to the judge's attention in their motion for reconsideration, they make no separate legal argument as to that motion, and we need not address it separately. See Mass. R. A. P. 16 (a) (9) (B), as appearing in 481 Mass. 1628 (2019). 

[Note 4] The defendants also presented other arguments, which we address in a memorandum and order pursuant to our rule 23.0, released simultaneously this day. 

[Note 5] The defendants do not contest that the notices were sent and posted, but they do challenge Christiana Trust's authority to hold title and conduct a foreclosure sale. 

[Note 6] The narrow class of cases consisted of those asserting a superior right to possession due to defects in the foreclosure. See Sheehan Constr. Co., 299 Mass. at 53. 

[Note 7] Indeed, in Gabriel, we noted that "Deutsche Bank, having acquired the property after a foreclosure sale, was both required and entitled to use summary process, G. L. c. 239, § 1, to recover possession from the defendants, who continued to occupy the premises after foreclosure." Gabriel, 81 Mass. App. Ct. at 565-566. 

[Note 8] Statute 1879, c. 237 provided: 

"When a mortgage of real estate is foreclosed by a sale under a power contained therein, or otherwise, and the person having a valid title to such estate is kept out of possession by any person without right, he may recover such possession in the manner provided in chapter one hundred and thirty-seven of the General Statutes for the recovery of lands unlawfully held by tenants; but the condition of the recognizance required in case of appeal or removal on the part of the defendant shall be, to enter the action, and to pay to the plaintiff a reasonable sum as rent of the premises, from the day the mortgage is foreclosed until such possession is obtained, together with all costs, if the final judgment is for the plaintiff."

General Laws c. 239, § 1, currently provides in pertinent part:

"If a forcible entry into land or tenements has been made, if a peaceable entry has been made and the possession is unlawfully held by force, if the lessee of land or tenements or a person holding under him holds possession without right after the determination of a lease by its own limitation or by notice to quit or otherwise, or if a mortgage of land has been foreclosed by a sale under a power therein contained or otherwise, or if a person has acquired title to land or tenements by purchase, and the seller or any person holding under him refuses to surrender possession thereof to the buyer, or if a tax title has been foreclosed by decree of the land court, or if a purchaser, under a written agreement to purchase, is in possession of land or tenements beyond the date of the agreement without taking title to said land as called for by said agreement, the person entitled to the land or tenements may recover possession thereof under this chapter . . . ."

[Note 9] See, e.g., Wayne Inv. Corp. v. Abbott, 350 Mass. 775, 775 (1966) ("Legal title is established in summary process by proof that the title was acquired strictly according to the power of sale provided in the mortgage; and that alone is subject to challenge. If there are other grounds to set aside the foreclosure the defendants must seek affirmative relief in equity"); Sheehan, 299 Mass. at 53 ("Summary process cannot be extended to try title cases outside its terms"); New England Mut. Life Ins. Co. v. Wing, 191 Mass. 192, 196 (1906) ("yet as the right to possession follows the legal title when it is established, if the owner of the equitable title at the time of sale has sufficient grounds upon which to reopen and set aside the foreclosure he must resort to a court of equity for affirmative relief"); Warren, 130 Mass. at 542 (1879 statute "ancillary to and part of foreclosure," not general mandate to try title). 

[Note 10] Whether any purported defect in the foreclosure would provide a defense to possession, as opposed to a potential counterclaim for damages, will turn on whether the foreclosure was void or voidable. See, e.g., Pinti v. Emigrant Mtge. Co., 472 Mass. 226, 240-242 (2015). Because the issue does not arise here, we do not address it. 

[Note 11] These cases also reflect the sea change in the manner in which real estate transactions are financed and the resulting transformation of modern conveyancing practices. See, e.g., Pinti, 472 Mass. at 240-242; Eaton v. Federal Nat'l Mtge. Ass'n, 462 Mass. 569, 571 (2012); U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637, 638, 651 (2011). As contemporary commentators have noted, the foreclosure crisis called on courts across the nation to reevaluate the interplay between legal and equitable rights in mortgage foreclosures. See Davidson, New Formalism in the Aftermath of the Housing Crisis, 93 B.U. L. Rev. 389, 392, 429 (March 2013). 

[Note 12] Two prior Housing Court summary process actions, one commenced by Christiana Trust and a second commenced by Diplomat, along with a Superior Court action in Middlesex County commenced against multiple parties including Diplomat by the defendants, had been filed and dismissed before Diplomat commenced this action. None of the prior cases, other than the Barnstable action, were pending at the time of the present action, and Mass. R. Civ. P. 12 (b) (9) therefore does not apply to them. See Lyons v. Duncan, 81 Mass. App. Ct. 766, 770-771 (2012) ("Rule 12[b][9] provides for the dismissal of a second action in which the parties and the issues are the same as those in a prior action still pending in a court of this Commonwealth" [emphasis added; citation and footnote omitted]). 

[Note 13] According to the defendants, they had commenced an identical action in Superior Court in Middlesex County on November 9, 2018, but when it was dismissed on April 24, 2019, for failure to serve the complaint, the defendants chose to refile the action in Barnstable County. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.