NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1137

387 NEWTON STREET LLC

vs.

UZOAMAKA NWOYE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a summary process bench trial in the Housing Court, judgment entered awarding possession of a single-family home (property) in Brookline to the plaintiff, 387 Newton Street LLC (landlord).  The defendant, Uzoamaka Nwoye (tenant), appeals, arguing that the judge improperly declined to order further discovery from the landlord, restricted her questioning of witnesses, and relied on "false assumptions" to support factual findings that the landlord did not breach the lease agreement or the Housing Assistance Payments (HAP) contract.  We affirm.

Background.  We summarize the judge's findings of fact based on the evidence at trial.  The landlord is a limited liability corporation created for the purpose of holding the

property.  In 2010, Elizabeth Cunningham and her husband George Warner purchased the property, which was next door to their own home, and rented it to a series of tenants beginning in 2012. The plan was that "perhaps eventually" Cunningham's parents would move into the property.

Beginning in June 2022, the tenant rented the property pursuant to a one-year lease.  The lease provided that on or before April 1, 2023, the "Landlord and Tenant shall consult as to whether lease shall be renewed or terminated . . . on June 30, 2023."  The tenant's rent was subsidized through the Section 8 rental voucher program administered by the Brookline Housing Authority, and thus the tenancy could be terminated only for the reasons permitted by regulations pertaining to Section 8 tenancies.

As a result of Cunningham's parents' declining health, Cunningham and Warner decided in the fall of 2022 to move the parents into the property.[1]  On March 7, 2023, they notified the tenant by an e-mail message that the lease for the property would end on June 30.

On March 31, 2023, the landlord served the tenant with a notice to quit, effective at the expiration of the lease on June

_____

[1] As of trial, the father's health had declined further, and the testimony focused on only the mother's occupying the property.

2

30, giving as the reason for termination "other good cause, namely the owner's desire to use the unit for personal or family use." Among the permissible reasons for termination of a Section 8 tenancy is "[t]he owner's desire to use the unit for personal or family use." 24 C.F.R. § 982.310(d)(1)(iii).

At trial, the tenant disputed that the true reason for termination of the lease was so that Cunningham's mother could live at the property, arguing that the termination was in retaliation for the tenant's assertion of her need for "boundaries." The tenant also argued that the landlord did not "consult" with her, as required by the language of the lease, before terminating the tenancy.

The judge credited Cunningham's testimony about her parents' deteriorating health and desire for her mother to live in the property, finding that it was "credible, detailed and compelling," and "the actual reason" for termination of the tenancy. The judge also found no evidence of retaliation by the landlord. Judgment for possession and court costs plus interest entered for the landlord. The tenant appeals.

Discussion. On review of a judgment in a summary process action, we accept the factual findings of the judge as true unless they are clearly erroneous, but "scrutinize without deference the legal standard which the judge applied to the facts" (citation omitted). Cambridge St. Realty, LLC v.

3

Stewart, 481 Mass. 121, 123 (2018).  Because the judge "has a firsthand view of the presentation of evidence," including the testimony of witnesses, the judge "is in the best position to judge the weight and credibility of the evidence" (quotation and citation omitted).  Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 509-510 (1997).

The tenant argues that the landlord's responses to interrogatories were "evasive or incomplete," and that the judge erred by ruling, after trial had begun, that the landlord had complied with discovery and was not required to more specifically answer an interrogatory that sought information including "all communications" the landlord had with any person at the Brookline Housing Authority.  After ascertaining that no witness from the Brookline Housing Authority had been subpoenaed to testify, the judge explained that the tenant could ask any witnesses who did testify about their communications with the Brookline Housing Authority, but out-of-court statements of anyone from that agency would be inadmissible hearsay.  The judge also noted that the tenant had not filed any motion to compel discovery.  We conclude that the judge did not abuse her "considerable discretion" by ruling that the landlord had complied with discovery and declining to order a more specific response to the interrogatory.  Bank of Am., N.A. v. Rosa, 466 Mass. 613, 626 (2013).  See Diplomat Prop. Manager, LLC v.

4

Lozano, 102 Mass. App. Ct. 57, 65-66 (2022) (attributes of summary process procedure include "expedited and limited discovery").

Next, the tenant argues that the judge impermissibly limited her cross-examination of Cunningham and "did not allow [her] to question" Warner, who was not called as a witness at trial. As to Cunningham's testimony, the tenant does not point to any specific ruling of the judge; rather, the tenant argues generally that the judge "greatly limited" her cross-examination of Cunningham, and, citing criminal cases, that the limitation prevented her from presenting her retaliation defense. We have reviewed the transcript of Cunningham's testimony on cross-examination and recross-examination. We conclude the judge's rulings reveal no abuse of discretion, i.e., "a clear error of judgment in weighing the factors relevant to the decision, . . . such that the decision falls outside the range of reasonable alternatives" (citation omitted), Morse v. Ortiz-Vazquez, 99 Mass. App. Ct. 474, 484 (2021), the standard announced in L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014). Nor did the judge prevent the tenant from questioning Warner, whom the tenant did not subpoena.

The tenant argues that the judge erred in concluding that the landlord's termination of the tenancy was not in breach of the lease or the HAP contract. Based on her finding that

5

Cunningham's testimony was credible, the judge concluded that the "actual reason" the landlord terminated the tenancy was so that Cunningham's mother could occupy the property. We concur with the judge's conclusion that the notice to quit was legally sufficient to terminate the tenancy and comported with the Federal regulations for termination of a Section 8 tenancy. See Cambridge St. Realty, 481 Mass. at 131 & n.11, 132 (notice to quit complied with requirement of 24 C.F.R. § 982.310[e][1] to "specif[y] the grounds for termination of tenancy"). Cf. Scott Realty Group Trust v. Charland, 98 Mass. App. Ct. 706, 712-713 (2020) (notices to quit gave no reason for terminating tenancy, and thus violated HAP contract). Contrary to the tenant's argument, the language in the lease that the landlord and the tenant "shall consult" as to renewal or termination of the lease on or before April 1, 2023, did not authorize the tenant to prevent the landlord from exercising its rights to terminate the lease at the end of the term.

From the evidence at trial, the judge had ample basis to conclude that the landlord had properly terminated the tenancy for a permissible reason: so that Cunningham's mother could occupy the property. The tenant argues that the landlord did not present "any evidence" of Cunningham's mother's declining health or the plan for the mother to occupy the property. On the contrary, Cunningham testified in detail about her mother's

6

declining health and that it was the reason for terminating the tenancy, and the judge credited that testimony.  Those findings are not clearly erroneous, and so we must accept them as true. See Cambridge St. Realty, 481 Mass. at 123.

As for the tenant's claim that the judge relied on "false assumptions" and "appeared non-neutral in this case," we have reviewed the record and conclude that it reveals no evidence of personal bias by the judge against the tenant.  Adverse rulings alone are insufficient to establish judicial bias except "'in the rarest circumstances' where they 'reveal such a high degree of favoritism or antagonism as to make fair judgment impossible,'" which did not occur here.  Passero v. Fitzsimmons, 92 Mass. App. Ct. 76, 83 (2017), quoting Liteky v. United States, 510 U.S. 540, 555 (1994).  To the extent that the tenant may be claiming bias arising from an extrajudicial source rather than from the evidence, there is no evidence in the record to

support such a claim.  See Haddad v. Gonzalez, 410 Mass. 855, 863-864 (1991).

Judgment affirmed.

By the Court (Shin, Grant & Hershfang, JJ.[2]),

Clerk

Entered:  October 7, 2025.

---

[2] The panelists are listed in order of seniority.